IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SMITH & HAWKEN, LTD., | No. C 04-1664 SBA (MEJ) |
| Plaintiff(s), | **REPORT AND RECOMMENDATION RE:** |
| vs. | |
| GARDENDANCE, INC., et al., | **(1) PLAINTIFF'S MOTION FOR AN AWARD OF PREVAILING PARTY ATTORNEY'S FEES; AND** |
| Defendant(s). | |
| | **(2) PLAINTIFF'S MOTION FOR SANCTIONS** |

## I.   INTRODUCTION

Before the Court is Plaintiff's Motion for (1) an Award of Prevailing Party Attorney's Fees Pursuant to 17 U.S.C. § 505 and (2) an Order of Sanctions Against GardenDance and their Counsel, filed on August 15, 2005. After careful consideration of the parties' papers, oral arguments at the December 1, 2005 hearing, the applicable statutory and case law authorities, and good cause appearing, the Court hereby RECOMMENDS that the District Court GRANT Plaintiff's motion for attorney's fees and DENY Plaintiff's motion for sanctions for the reasons set forth below.

## II.   BACKGROUND

Plaintiff Smith & Hawken, Ltd. ("Plaintiff") and defendant GardenDance, Inc. ("GardenDance") are both in the business of selling outdoor garden torches. On January 15, 2005, Plaintiff received a letter from outside counsel for GardenDance which alleged that GardenDance owned "copyright VA-967-403 for a

Tiki Design Torch" and demanded that Plaintiff cease and desist from selling the "infringing torches." Compl. ¶ 10. On April 28, 2004, Plaintiff filed a complaint against GardenDance and Mark Donley (collectively, "Defendants") for declaratory relief. Plaintiff sought a determination that it had not infringed any copyright owned by GardenDance by reason of its sale of outdoor garden torches. On May 11, 2004, Plaintiff amended its complaint to include a requested determination that GardenDance's copyright in its torch was invalid.

On June 25, 2004, Defendants filed an answer and asserted six counterclaims, alleging copyright infringement, trade dress infringement, unfair competition, civil RICO claims, and a request for declaratory and injunctive relief.

On August 30, 2004, Plaintiff filed a Motion to Dismiss all of Defendants' counterclaims, with the exception of the claim for copyright infringement. By Order dated November 5, 2004 ("November 5 Order"), the Honorable Saundra Brown Armstrong granted Plaintiff's motion and dismissed the counterclaims without prejudice. Judge Armstrong granted Defendants leave to file amended counterclaims within thirty days of the Order, instructing Defendants that "[a]ny and all amended counterclaims [] specifically set forth each cause of action that Defendants seek to bring against Plaintiff and **provide factual allegations consistent with the original pleading sufficient to support each cause of action.**" *Id.* at 16 (emphasis in original). Judge Armstrong further ordered that any amended counterclaims Defendants file "must comply with Federal Rule of Civil Procedure 11." *Id.* To the extent that Defendants did not amend their counterclaims within the time set forth in the November 5 Order, Judge Armstrong warned that the Court "may **dismiss Defendants' counterclaims with prejudice**, either sua sponte or on motion of the Plaintiff." *Id.* (emphasis in original).

On December 14, 2004, Plaintiff filed a second Motion to Dismiss as Defendants had not filed amended counterclaims. On February 8, 2005, Judge Armstrong granted Plaintiff's second motion and dismissed the counterclaims (with the exception of the claim of copyright infringement) with prejudice.

On May 16, 2005, Plaintiff filed a Motion for Summary Judgment seeking a declaration that GardenDance's torch was not entitled to copyright protection and that it could not be infringed as a matter of law. On July 28, 2005, Judge Armstrong granted summary judgment for Plaintiff ("July 28 Order"),

stating that it successfully overcame the presumption of validity of the copyright registration for GardenDance's torch, that such torch was merely a useful article not entitled to copyright protection under the Copyright Act, and that, as a matter of law, GardenDance's torch could not be infringed. July 28 Order at pp. 6-8.

On August 15, 2005, Plaintiff filed the present Motion for (1) an Award of Prevailing Party Attorney's Fees Pursuant to 17 U.S.C. § 505 and (2) an Order of Sanctions Against Defendants and their Counsel.

### III.  DISCUSSION

In its motion, Plaintiff argues that it is entitled to recover its reasonable attorney's fees incurred in this case because it achieved all of the benefits it hoped to achieve in this action, and because Plaintiff's pursuit of such relief furthers the goals of the Copyright Act. Plaintiff further argues that it is entitled to sanctions against Defendants and their attorneys of record for their failure to have any evidentiary or legal basis to assert numerous counterclaims against it, alleging that Defendants and their counsel failed to perform a reasonable investigation into the truthfulness or adequacy of the facts underlying the counterclaims asserted against it. Plaintiff contends that Defendants and their counsel acted in bad faith, and that the counterclaims were brought for the sole purpose of harassing it and to unreasonably multiply the proceedings.

In response, Defendants' counsel, Joel D. Joseph, argues that the failure to file "a" counterclaim would have constituted malpractice because its registered copyright is presumed to be valid. Mr. Joseph further argues that counsel did not act vexatiously; rather, he was justified in filing "a" counterclaim to protect the rights of his clients. Finally, Mr. Joseph argues that he was never given notice that the drafting of "the" counterclaim was sanctionable.

As Plaintiff's motion seeks prevailing party attorney's fees and a separate order for sanctions, the Court shall address each request in turn.

///

**A.    Plaintiff's Motion for Prevailing Party Attorney's Fees**

    1.    <u>Legal Standard</u>

3

Under 17 U.S.C. § 505, district courts have judicial discretion to grant attorney fees to the prevailing party in a copyright action. *Fogerty v. Fantasty, Inc.*, 510 U.S. 517, 533 (1994). However, there is no exact formula for how courts should exercise this discretion. *Id.* at 527-33. Courts must make their determinations based on equitable circumstances. *Perfect 10, Inc. v. Visa International Service Assoc.*, 2005 WL 2007932 at *2 (N.D. Cal. 2005). Ultimately, when courts grant attorney fees, they must support their decisions by analyzing facts such as "the degree of success obtained, frivolousness, motivation, objective unreasonableness of both the legal and the factual arguments, the need to advance considerations of compensation and deterrence, and the purpose of the Copyright Act itself." *Jackson v. Axton*, 25 F.3d 884, 890 (9th Cir. 1994). These factors should be applied when they are consistent with the purpose of the Copyright Act, which is not merely to discourage copyright infringement. *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir. 1996). "The policies served by the Copyright Act are more complex, more measured, than simply maximizing the number of meritorious suits for copyright infringement." *Id.* at 559. Further, not all factors must be met in order to support an award of attorney's fees. *Id.* at 558.

In *Fogerty*, the Supreme Court instructed that, for purposes of determining the amount of attorney fees to be awarded under the Copyright Act, the equitable discretion of the court should be guided by the considerations identified in *Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983). *Fogerty*, 510 U.S. at 534. In *Hensley*, the Court approved the lodestar method for calculating fees in civil rights litigation: multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate. *Hensley*, 461 U.S. at 433. The Ninth Circuit has further clarified the inquiry the Court is to conduct: "[t]he prevailing market rate is indicative of a reasonable hourly rate. The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah County*, 815 F.2d 1258, 1262-63 (9th Cir.1987) (citing *Blum v. Stenson*, 465 U.S. 886 (1984)).

Once calculated, the lodestar rate may be adjusted "to account for other factors not subsumed within it." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n. 4 (9th Cir. 2001). Those other

4

1  factors include the preclusion of other employment, the customary fee, time limits imposed on the attorney
2  by the client or other circumstances, the undesirability of the case, the nature and length of the professional
3  relationship between client and attorney, and the awards allowed in similar cases. *Morales v. City of San*
4  *Rafael*, 96 F.3d 359, 363 n. 9 (9th Cir. 1996).

### 2. Application to the case at bar

Here, Plaintiff's success is complete and unquestioned.  First, Plaintiff has succeeded not only in having Defendants' copyright infringement counterclaim dismissed, it has also succeeded in having the copyright in GardenDance's torch declared invalid.  *See* July 27, 2005 Order.  The Court also notes that Plaintiff's success was based on the merits of its invalidity defense, rather than on a technical defense. *Fantasy, Inc.*, 94 F.3d at 556 (court awarded attorney's fees under 17 U.S.C. § 505 in part because defendant "prevailed on the merits rather than on a technical defense").

Second, Plaintiff's claims cannot be characterized as frivolous, but were brought in response to a demand letter from GardenDance that Plaintiff cease selling "infringing torches."

Third, Plaintiff's success furthers the policies of the Copyright Act "every bit as much as a successful prosecution of [the] infringement claim by" GardenDance would have.  *Fogerty*, 510 U.S. at 527.  The primary objective of the Copyright Act is not only to deter infringement, but also to promote public access to non-protected works.  *Id.*  "To that end, [parties] who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate to the same extent that [copyright owners] are encouraged to litigate meritorious claims of infringement."  *Id.*  Plaintiff's successful invalidation of GardenDance's copyright furthers this policy because it prevented GardenDance from keeping the merely functional features of its outdoor torch out of the public domain.  Plaintiff has demonstrated that GardenDance's torch is a useful article with merely functional, rather than artistic, attributes, thereby promoting the Copyright Act's policy of excluding from copyright protection the mechanical or utilitarian aspects of a particular work.  *See* 17 U.S.C. § 101.

Finally, an award of Plaintiff's attorney's fees will not impose too great or inequitable a burden on Defendants.  GardenDance has admitted that it has sold at least 55,000 of its GardenDance Torches throughout the United States.  Hollander Decl. Ex. C, p. 3.  Moreover, the GardenDance Torch is only one

of the numerous torches and other outdoor items sold nationally by GardenDance. *Id.* Ex. S. Presumably, GardenDance is not an impecunious party as it has been represented by counsel throughout this litigation, as well as in other litigations relating to the same copyright. *Id.* Ex. T. Accordingly, the Court finds an award of attorney fees appropriate.

The Court must now determine the amount of the fee award. Plaintiff seeks $97,674.60 as the prevailing party in this action, as well as $16,774.29 in connection with the prevailing party portion of the present motion. The requested fee amount is solely for the copyright portion of this action. Plaintiff summarizes the work performed by its counsel as follows:

> <u>Pre-suit Investigation</u>: Counsel conferred with Smith & Hawken regarding the allegations of copyright infringement made by GardenDance and investigated the history of the Smith & Hawken/GardenDance relationship. Counsel also examined the GardenDance Torch, the allegedly infringing Smith & Hawken Torch, and third party torches. Counsel investigated third party cases in which GardenDance had made claims of infringement. Counsel also researched the possible defenses to a claim of copyright infringement.
>
> <u>Complaint</u>: Based on counsel's legal research, counsel prepared and filed the Complaint and Amended Complaint herein, seeking a declaration of non-infringement on the basis that GardenDance's torch was not copyrightable. Counsel also answered the copyright infringement counterclaim filed by GardenDance.
>
> <u>Case Management Conference</u>: Counsel prepared the required Joint Case Management Conference Statement pursuant to Fed. R. Civ. P. 26 in conjunction with GardenDance's counsel. Moreover, due to GardenDance's counsel's failure to attand a telephonic case management conference (for which the Court issued an Order to Show Cause why sanctions should not be entered against counsel), Smith & Hawken's counsel was required to attend a case management conference in person. Counsel also communicated with GardenDance's counsel as needed.
>
> <u>Discovery</u>: The parties communicated regarding Initial Disclosures and other discovery matters and prepared and exchanged Initial Disclosure Statements.
>
> <u>Early Neutral Evaluation</u>: The parties agreed to conduct an Early Neutral Evaluation session, for which there were numerous communications and telephonic conferences among the parties and the assigned neutral to determine the date and the scope of the session.
>
> <u>Summary Judgment</u>: Counsel prepared and filed its summary judgment motion on the copyright issue, which [the District] Court granted.

1   <u>Motion for Prevailing Party Fees</u>: Based on the summary judgment
2   in favor of Smith & Hawken invalidating the copyright in the GardenDance
    Torch, counsel has prepared the instant motion.

3   Pl.'s Mot. for an Award of Prevailing Party Attorney's Fees, 17:13-18:12.

4   Plaintiff also provides the following summary of hours worked and hourly rates:

| Timekeeper | Hours worked | 2004 Hourly Rate | 2005 Hourly Rate |
|---|---|---|---|
| Susan Hollander | 36.9 | $450 x 8.8 | $504 x 28.1 |
| Laura Franco | 124.4 | $306 x 13.8 | $369 x 110.6 |
| Jennifer Golinveaux | 22.5 | $306 x 22.5 | N/A |
| Ryan Hilbert | 79.9 | $279 x 34 | $319.50 x 45.9 |
| Allen Lee | 11.3 | $229.50 x 3.5 | $265 x 7.8 |
| Paralegals | 14.8 | $76.50 - $108 x 5 | $90 - $189 x 9.2 |
| Imaging & Litigation Support | 14.4 | $81 | $81 |

On December 15, 2005, Plaintiff provided the following calculations in connection concluding the prevailing party portion of the present motion:

| Timekeeper | Year | Hours x Rate | Total |
|---|---|---|---|
| Susan Hollander | 2005 | 7.85 x $504 | $3956.40 |
| Laura Franco | 2005 | 34.55 x $369 | $12,748.95 |
| Giselle Darwish | 2005 | 1.5 x $117 | $175.50 |
| Uyen Vu | 2005 | 8.65 x $144 | $1245.60 |
| Donna Wishon | 2005 | 1.7 x $189 | $190.35 |
| Imaging & Litigation Support | 2005 | 2.35 x $81 | $190.35 |
|  |  | Subtotal | $18,638.10 |

**Total (with 10% discount) = $16,774.29**

The Court has reviewed Plaintiff's submissions and finds the rates and amount of time reasonable. Plaintiff provides several reasons to support this decision. First, the rates charged are consistent with the reputation and experience of the attorneys and professionals who performed the services. Manatt, Phelps

7

& Phillips, LLP is an AV-rated firm in the *Martindale-Hubbell* listing. Hollander Decl. ¶ 27. Further, the individual attorneys involved in this case have experience in intellectual property and copyright infringement actions of the type prosecuted here consistent with the rates they charged. *Id.* at ¶¶ 28, 30.

Second, the rates charged are consistent with the results achieved - Plaintiff's counsel achieved summary judgment invalidating the copyright in GardenDance's torch and was able to do so without protracted discovery.

Third, the rates charged are consistent with the rates customarily charged for work performed by comparable law firms in California. Plaintiff provides the following examples from a December 2004 *National Law Journal* survey of hourly billing rates:

- Cooley Godward charges from $376-$700 for partners and $205-$550 for associates
- Thelen, Reid & Priest charges $350-$650 for partners and $175-$425 for associates
- Loeb & Loeb charges $350-$725 for partners and $185-$375 for associations
- Gray, Cary, Ware & Freidenrich charges $310-$695 for partners and $215-$495 for associates

Hollander Decl. Ex. Q. Based on this survey, the Court finds Manatt's rates are commensurate with those charged by comparable firms in California.

Fourth, the rates charged are consistent with the complexity of the work involved, given that courts recognize that "copyright law and issues of infringement are specialized areas of law, requiring specialists in the field." *Fantasy, Inc. v. Fogerty*, 1995 WL 261504 at *4 (N.D. Cal. 1995).

Finally, Manatt provided Plaintiff a 10% discount off of the total fees and costs due to Plaintiff's long-standing relationship with the firm. Hollander Decl. ¶ 24. Accordingly, the Court finds Plaintiff's request to be reasonable and RECOMMENDS that the District Court GRANT **$106,948.89** in attorney fees.

///
///

**B.     Plaintiff's Motion for Sanctions**

1.     Legal Standard

28 U.S.C. § 1927 provides in relevant part that "[a]ny attorney . . . who so multiplies the

1   proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the
2   excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." By its plain
3   language, this provision applies to "unnecessary filings and tactics once a lawsuit has begun." *Pacific*
4   *Harbor Capital, Inc. v. Carnival Airlines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000). Section 1927
5   does not authorize sanctions from a party, but only from an attorney or otherwise admitted representative of
6   a party. *Federal Trade Commission v. Alaska Landleasing, Inc.*, 799 F.2d 507, 510 (9th Cir. 1986).

7   Sanctions under Section 1927 must be supported by a finding of subjective bad faith. *In re*
8   *Keegan Mgmt. Co. Sec. Lit.*, 78 F.3d 431, 436 (9th Cir. 1996). Bad faith for purposes of Section 1927
9   is present when an attorney knowingly or recklessly raises a frivolous argument. *Pacific Harbor*, 210 F.3d
10  at 1118. Thus, the frivolousness of a claim or argument does not by itself justify an award of sanctions
11  under Section 1927; the additional element of wrongful purpose is required. *Cinquini v. Donahoe*, 1996
12  WL 79822 *8 (N.D.Cal. 1996). Ignorance, negligence, incompetence, or even a basic lack of professional
13  courtesy do not constitute "bad faith." *Cruz v. Savage*, 896 F.2d 626, 630 (1st Cir. 1990).

14  Plaintiff also seeks sanctions under the District Court's inherent power. The Ninth Circuit provides
15  that sanctions pursuant to a court's inherent powers "are available if the court specifically finds bad faith or
16  conduct tantamount to bad faith." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1108 (9th Cir. 2002).
17  "[A] finding of bad faith does not require that the legal and factual basis for the action prove totally
18  frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion
19  of a colorable claim will not bar the assessment of attorney's fees." *Id.* at 992.

20  ///
21  ///
22

23      2.    <u>Application to the case at bar</u>
24  Here, Plaintiff argues that sanctions are appropriate because Defendants asserted numerous
25  counterclaims which had no basis in law or fact, but which were meant solely to harass Plaintiff. Plaintiff
26  directs the Court's attention to the following allegations:
27      •    Plaintiff copied the design of its outdoor garden torches and
28

United States District Court
For the Northern District of California

subsequently had inferior copies made in China. Hollander Decl. Ex. C, ¶¶ 5, 21.
- Plaintiff has the infringing torches made for it in China by workers who are not paid decent wages, workers who live under slave-like conditions, by employees of the People's Liberation Army and by prison workers. *Id.* at ¶ 7.
- Plaintiff stole various copyright and/or trade dress rights from other competitors. *Id.* at ¶¶ 31-33.

Plaintiff argues that none of these allegations were made on information and belief, nor were they verified, and that Defendants have never filed any declaration or other document indicating that the facts upon which they relied in asserting those counterclaims were believed to be true, or that their counsel had undertaken even a minimal investigation into the truthfulness of the allegations. Plaintiff also contends that Judge Armstrong, in granting Plaintiff's first motion to dismiss, ordered Defendants to file amended counterclaims, and that Defendants failed to comply with this order, stating that they "may never do so." *Id.* at Ex. H, p. 1.

In response, Defendants argue that it was Plaintiff that filed this action and that failure to file "a" counterclaim would constituted malpractice. Defendants state that GardenDance has a federal registered copyright which is presumed valid and they had every right to rely on the validity of that copyright. Defendants further argue that Mr. Joseph did not intend to harass Plaintiff; rather, he was seeking to represent the copyright holder's interest. Finally, Defendants argue that they were never given notice that the drafting of "the" counterclaim was sanctionable.

Upon review of the parties' arguments, the Court finds sanctions inappropriate in this matter. Despite Plaintiff's complaints about Defendants' counsel, the Court finds that Plaintiff has demonstrated - at best - only that Defendants' counsel acted with poor judgment or incompetently. First, the Court notes that GardenDance, in order to protect its copyright, filed its infringement counterclaim in response to Plaintiff's request for declaratory relief. Despite the fact that the District Court later declared its copyright invalid, at least one of GardenDance's Counterclaims appears to have been filed in good faith. Accordingly, the Court need only concern itself with Counterclaims Two through Six: violations of Section 43(a) of the Lanham Act (trade dress infringement) (count 2); unfair competition (count 3); civil RICO claims (counts 4 and 5): and a request for declaratory and injunctive relief (count 6).

10

There is no evidence, however, that Defendants' counsel acted with an improper purpose or with bad faith. Although Plaintiff identifies instances of poor judgment, some of which could rise to the level of sanctionable conduct, the Court does not find that Defendants or their counsel acted with subjective bad faith in this lawsuit. In his declaration, Mr. Joseph certifies that all the allegations and factual contentions in the counterclaims have evidentiary support. Decl of Joel Joseph at ¶3. Moreover, although Plaintiff argues that Judge Armstrong ordered Defendants to file amended counterclaims, the November 5 Order provides only that Judges Armstrong granted leave to file amended counterclaims, not that she ordered Defendants to file them. An award of sanctions under 28 U.S.C. § 1927 is therefore inappropriate and the Court hereby RECOMMENDS that the District Court DENY Plaintiff's motion for sanctions.

## IV. CONCLUSION

Based on the foregoing analysis, the Court hereby RECOMMENDS that the District Court GRANT Plaintiff's motion for attorney's fees in the amount of $106,948.89 and DENY Plaintiff's motion for sanctions.

**IT IS SO RECOMMENDED.**

Dated: December 19, 2005

MARIA-ELENA JAMES
United States Magistrate Judge